**ALLEN–BRADLEY COMPANY, INC., Plaintiff,**

v.

**DATALINK TECHNOLOGIES, INC., Sage Automation Corporation, and Equus Technologies, Inc., Defendants.**

No. 97–C–927.

United States District Court, E.D. Wisconsin.

July 15, 1999.

Jeffrey Costokos, Milwaukee, WI, for plaintiff.

James W. Greer, Jr., Milwaukee, WI, Brendan Rowan, Brookfield, WI, Mark M. Yang, Vancouver, BC, for defendants.

## DECISION AND ORDER

ADELMAN, District Judge.

This is a patent infringement case arising under Title 35 of the United States Code. Plaintiff Allen–Bradley Company, Inc. charges that the three defendants infringed on its patents of various communications devices. One of the defendants, Equus Technologies, Inc., moves to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction.[1]

## I. ALLEGATIONS AND EVIDENCE RELEVANT TO PERSONAL JURISDICTION

Plaintiff is located in Wisconsin; defendant Datalink Technologies, Inc. is located in the State of Washington; and defendants Equus and Sage Automation Corporation are in British Columbia, Canada. The complaint includes a number of allegations relating to Equus. (First Am.Compl. ¶¶ 6, 14, 17, 23, 29, 35.) Although the wording of the paragraphs varies slightly, plaintiff's essential allegation is that Equus manufactures, sells and offers to sell in the Eastern District of Wisconsin communication devices that infringe plaintiff's patents. Plaintiff alleges that Sage imports infringing devices into the United States and that Datalink manufactures and sells infringing devices in the United States. Plaintiff also presents evidence that Datalink sells Equus-manufactured products in Wisconsin.

Equus submits an affidavit from its president, Robert Angus, relating to the motion to dismiss. According to Angus, Equus manufactures communication controllers in Canada and sells all of them to Sage. Angus states that Equus delivers most of the controllers to Sage in Canada but, at Sage's direction, Equus delivers a small percentage of the controllers to Datalink in Washington State. Angus further avers that Equus does not advertise or sell in the United States and has never sold or delivered its products to a Wisconsin customer. Plaintiff does not submit any evidence controverting Angus's assertions.

For purposes of determining personal jurisdiction I take all of plaintiff's factual allegations that are not directly controverted as being true. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1563 (Fed.Cir.1994). Construing the allegations and evidence in the light most favorable to the plaintiff, the evidence shows that Equus manufactures the controllers in Canada, sends them to Sage in Canada and to Datalink in Washington, and that Datalink sells some of them in Wisconsin.

## II. LAW RELATING TO PERSONAL JURISDICTION

Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits the assertion of jurisdiction,[2] and whether the assertion of personal jurisdiction violates due process. *Genetic Implant Sys., Inc. v. Core–Vent Corp.*, 123 F.3d 1455, 1458 (Fed.Cir.1997). The Wisconsin long-arm statute provides jurisdiction to the full extent permitted by due process. *Flambeau Plastics Corp. v. King Bee Mfg. Co.*, 24 Wis.2d 459, 464, 129 N.W.2d 237 (1964).[3]

1. Equus also moves to dismiss under Fed. R.Civ.P. 12(b)(6) for failure to state a claim for relief. Because I find the Rule 12(b)(2) motion dispositive I do not address the Rule 12(b)(6) motion.

2. Federal courts apply the relevant state statute when determining whether a federal court, sitting in a particular case, has personal jurisdiction over a defendant, even when the cause of action is purely federal. *See* Fed.R.Civ.P. 4(k). Rule 4(k) authorizes me to exercise personal jurisdiction over persons pursuant to Wisconsin's long-arm statute. *Graphic Controls Corp. v. Utah Med. Prods., Inc.*, 149 F.3d 1382, 1385 n. 2 (Fed.Cir.1998).

3. In applying the state long-arm statute I defer to the interpretation of the statute by Wisconsin courts. *See Red Wing Shoe Co. v. Hockerson–Halberstadt, Inc.*, 148 F.3d 1355 (Fed.Cir.1998) (finding that Minnesota long-

Therefore, to determine if there is personal jurisdiction I need only conduct the due process analysis. In conducting the due process analysis in patent infringement cases I apply the law of the Federal Circuit. *See Akro Corp. v. Luker,* 45 F.3d 1541, 1543–44 (Fed.Cir.1995).

■ I may exercise personal jurisdiction over a non-Wisconsin defendant if the defendant has "minimum contacts" with this state such that maintenance of a lawsuit here "does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotation marks and citation omitted). "Minimum contacts" is understood to require that a defendant has " 'purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.' " *Viam Corp. v. Iowa Export–Import Trading Co.,* 84 F.3d 424, 428 (Fed.Cir.1996) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). The plaintiff has the burden of demonstrating the existence of personal jurisdiction. *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1276 (7th Cir.1997).

Plaintiff contends that the minimum contacts requirement is met based on the "stream of commerce" theory. The Federal Circuit has found personal jurisdiction to exist in a number of patent infringement cases based on the stream of commerce theory. In *Beverly Hills Fan* the Federal Circuit found personal jurisdiction existed where the defendants placed allegedly infringing products in the stream of commerce through a distribution channel that they established and where the defendants therefore knew the likely destination of the products. *Beverly Hills Fan,* 21 F.3d at 1565–66. The court subsequently applied the theory in *North American Philips Corp. v. American Vending Sales, Inc.,* 35 F.3d 1576, 1580 (Fed.Cir.1994), and found jurisdiction to exist because the

defendants "voluntarily placed a substantial quantity of infringing articles into the stream of commerce conscious that they were destined for" the forum state. And in *Viam,* 84 F.3d at 428–29, the Federal Circuit found jurisdiction to exist where the defendant established a regular chain of distribution for the allegedly infringing articles and "knowingly and intentionally exploited the ... market" through advertising by, and business advice to, its exclusive distributor. Thus, in order to establish personal jurisdiction based on a stream of commerce theory, plaintiff must show at a minimum that Equus knew that its products were headed for Wisconsin.

The Federal Circuit's discussion of the stream of commerce theory reflects earlier decisions by the Supreme Court. In *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297–98, 100 S.Ct. 559 (1980) (emphasis added), the Supreme Court stated:

> [I]f the sale of a product of a manufacturer or distributor ... is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States.... The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce *with the expectation that they will be purchased by consumers in the forum State.*

The importance of the defendant's knowledge of the destination of the goods is also reflected in the Supreme Court's divided opinions in *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Four justices opined that as long as the defendant is aware that the final product is being marketed in the forum state, jurisdiction premised on the placement of a product into the stream of

arm statute extends to limits of due process

based on decisions of Minnesota courts.)

commerce is consistent with the due process clause. *Id.* at 116–21, 107 S.Ct. 1026. A second group of four justices wrote that mere placement of a product into the stream of commerce is not an act purposefully directed at the forum state, even if done with an awareness that the stream of commerce will sweep the product into the forum state, absent additional conduct indicating an intent to serve the forum state market. *Id.* at 108–13, 107 S.Ct. 1026. Although the·*Asahi* court was divided on whether an act in addition to placing an article in the stream of commerce was necessary for a finding of personal jurisdiction, it nevertheless agreed that knowledge that the product would end up in the forum state was essential.

Therefore, under any variation of the stream of commerce theory, jurisdiction over Equus depends on whether Equus had an expectation or knowledge that its products would be sold and used in Wisconsin.

### III. DISCUSSION

■ In its complaint plaintiff charges Equus with "knowingly making, importing into, offering to sell or selling" in the Eastern District of Wisconsin infringing devices. (First Am.Compl. ¶ 23.) This allegation, if unrebutted, would be sufficient to establish personal jurisdiction over Equus in Wisconsin. However, Equus rebuts the allegation that it makes, imports, offers to sell or sells in Wisconsin. The Angus affidavit states that Equus sells only to Sage and that it delivers products only in Canada and in the State of Washington. Plaintiff does not contest Angus's statements. Thus it is undisputed that Equus does not itself conduct any business activities of any type in Wisconsin. Therefore, there is no basis for a finding of jurisdiction on the basis of any direct contact by Equus with Wisconsin.

At this point plaintiff's efforts to establish personal jurisdiction over Equus founder. Plaintiff presents no other allegations or evidence on which a finding of personal jurisdiction could rest. At most, plaintiff shows that there is a regular distribution channel through which Equus products enter Wisconsin. The evidence indicates that this distribution channel involves Equus selling to Sage, Sage selling to Datalink and Datalink selling in Wisconsin. Plaintiff, however, does not allege or present evidence showing that Equus played a role in establishing the distribution channel or that Equus had any expectation or knowledge that its products were going to Wisconsin.

Plaintiff's allegation that Equus was itself active in Wisconsin having been rebutted, plaintiff presents no other allegation or evidence to support a finding of personal jurisdiction. Plaintiff does not allege in its complaint that Equus knew that its products would end up in Wisconsin. Plaintiff makes this assertion in its brief, but the only evidence it offers on the point is that Datalink has a strong sales presence in Wisconsin. (Pl's Br. at 6.) This evidence, however, does not prove that Equus knew of the distribution system or the destination of its products. Unlike the situations in *Viam, North American Philips* and *Beverly Hills Fan,* plaintiff does not allege or present evidence that Equus participated in setting up the distribution system or that Equus assisted the sales efforts of Sage or Datalink. Plaintiff shows only that Equus's products were placed in the stream of commerce, which, without knowledge of their destination, is not enough to establish personal jurisdiction.

Because plaintiff does not allege knowledge on the part of Equus, Equus was not obliged to present rebuttal evidence. Further, plaintiff has conducted discovery and apparently has not turned up evidence that Equus knew that its products were headed for Wisconsin. Based on the foregoing I conclude that plaintiff has not met its burden of showing that Equus purposefully directed its business activities toward Wisconsin or that exercising personal jurisdic-

tion over Equus is consistent with the requirements of the due process clause.

**THEREFORE, IT IS ORDERED** that Equus's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) is hereby **GRANTED,** and Equus is **DISMISSED** from this action.